

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAR -7  AM 11: 37

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

January 26, 2017

Andrew Szekely, Esq.
Rebecca Talbott, Esq
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

    Re:    <u>United States v. Brian Shumate</u>, Criminal No.: JKB-15-0304

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, February 3, 2017, at 5:00 p.m., it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count Four of the Superseding Indictment now pending against him, which charges him with Production of Child Pornography in violation of Title 18, United States Code, Section 2251(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    That on or about May 12, 2015, in the District of Maryland, and elsewhere, the Defendant:

    a.    Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

    b.    For the purpose of producing a visual depiction of such conduct; and

    c.    The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign

commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

        d.     Prior to April 8, 2015, the Defendant had a prior conviction under the laws of any State relating to aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor or ward.

### Penalties

    3.    (a) The maximum sentence provided by statute for production of child pornography is as follows: not less than twenty-five (25) years and not more than fifty (50) years imprisonment, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, ~~and must pay a $5,000 special assessment pursuant to 18 U.S.C. § 3014, both of~~ which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.



        (b)    The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

    4.    The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

        a.    If the Defendant had persisted in a plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.    If the Defendant went to trial, the government would have the burden of

2

proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.       The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.       If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.       By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.       If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.       By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.       The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.       This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt,

3

and to the following applicable sentencing guidelines factors:

<u>Count Four (Minor Victim Jane Doe)</u>:

  a. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

  b. Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 34).

  c. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

<u>Relevant Conduct: Production of Child Pornography, Jane Doe (Count 2)</u>:

  d. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

  e. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

  f. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

<u>Relevant Conduct: Production of Child Pornography, Jane Doe (Count 3)</u>:

  g. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

  h. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

  i. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

<u>Relevant Conduct: Attempted Production of Child Pornography (Minor Victim 2)</u>:

  j. The base offense level for attempted production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

  k. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

  l. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

Relevant Conduct: Attempted Production of Child Pornography (Minor Victim 3):

  m. The base offense level for attempted production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

  n. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

  o. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

Grouping:

  p. Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.4, sexual exploitation of the same minor victim on different days does not group, there are therefore 5 units, and the highest offense level (36) is increased by four (4) levels. (Subtotal: 40).

  q. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Thus, the final anticipated offense level is 37.

Chapter Four Enhancement:

7. Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal 42).

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

5

9.   This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4, or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the Defendant

10.   The Defendant specifically agrees that his prior conviction in the Montgomery County Court of Common Pleas of Pennsylvania, Case Number CP-46-CR-0006955-2004, is a "prior conviction … under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." The Defendant agrees not to seek any relief, such as by *coram nobis* or otherwise, or to attack in any way the legality and viability of his prior conviction either in state court or in federal court. Failure to abide by this provision renders null and void this Office's obligations to the Defendant set forth in this agreement.

## Obligations of the United States Attorney's Office

11.   This Office agrees to recommend a sentence of no more than thirty-five (35) years of incarceration.

12.   The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

13.   At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Restitution

14.   For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. The Defendant reserves the right to object to this Office's request that the Defendant be ordered to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

**Collection of Financial Obligations**

15.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

16.     In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

17.     The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

**Forfeiture**

18.     Your client agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on August 13, 2015. He further agrees to take whatever steps are necessary to pass clear title to the property to the United States or any State authority. Those items include, but are not limited to:

    a.     Verizon Samsung Intensity II, model: SCH-U460, FCC ID: A3LSCHU460, manufactured in Korea.

**Waiver of Appeal**

19.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    b.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    c.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence in imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, and term or condition of supervised release); except as follows: (i) the Defendant to reserves the right to appeal any term of imprisonment to the extent it exceeds 35 years imprisonment; and (ii) this Office reserves the right to appeal any term of imprisonment to the extent it is below than 25 years' imprisonment.

    d.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from

appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        e.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

        f.     The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement.

## Obstruction or Other Violations of Law

20.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

21.    The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range

or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

22. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorneys. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

2/14/17
Date

Brian Shumate

We are Brian Shumate's attorneys. We have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises us that he understands and accepts its terms. To our knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/14/17
Date

Andrew Szekely, Esq.

2/14/17
Date

Rebecca Talbott, Esq.

9

**Attachment A**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Brian Shumate ("Shumate"), age 49, is a resident of Edgewood, Maryland. As detailed below, between 2013 and 2015, Shumate induced three minor females to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. Shumate engaged in this conduct while on parole for a sex offense conviction in Pennsylvania, and while avoiding the requirement to register as a sex offender. ~~Additionally, Shumate transported and possessed additional files of child pornography and saved them to his email accounts.~~ AS

Prior to April 8, 2015, Shumate had a prior conviction under the laws of any State relating to aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor or ward. Specifically, in approximately 2005, Shumate was convicted of Criminal Attempt – Involuntary Deviate Sexual Intercourse, Person Less than 16 Years of Age, in violation of Title 18 §§ 901 and 3123 of the Pennsylvania Consolidated Statutes, under Case Number CP-46-CR-0006955-2004 and was sentenced to 3 ½ years' to 7 years' incarceration; and was required to register as a sex offender.

Relevant Conduct – Attempted Production of Child Pornography – Minor Victim 2:

In the fall of 2013 through May 2014, Shumate began communicating with Minor Victim 2, who was 14, on a teen chat website. Minor Victim 2 provided her true age, and Shumate initially told her that he was a teenager. After a couple weeks, Shumate revealed his true age (45), and Minor Victim 2 tried to end the communication. Shumate continued the communication and asked Minor Victim 2 to produce and send sexually explicit photos of herself. Minor Victim 2 initially refused but eventually sent Shumate images of her breasts and vagina. Shumate then sent Minor Victim 2 images of his penis and face. Shumate texted and called Minor Victim 2 often, asking her to call him "daddy" and to refer to herself as "daddy's lil cunt slut." On one occasion after Minor Victim 2 had provided her out-of-state address to Shumate, he told her that he was coming to her school (not in Maryland), and that he was going to make her his sex slave.

Relevant Conduct – Attempted Production of Child Pornography – Minor Victim 3:

In March 2014, Shumate began communicating with Minor Victim 3, who was 15, on a teen chat website. Minor Victim 3's profile on the website listed her high school graduation year

1

as 2017. After they met on the website, the began communicating by email and Facebook. Shumate initiated sexual conversations with Minor Victim 3, and Shumate sent Minor Victim 3 images of his penis and face. Shumate asked Minor Victim 3 to produce and send images of her breasts and vagina, and send the images to Shumate. Minor Victim 3 sent Shumate an image of her bare breasts.

Shumate's Facebook account contained the following messages that he sent to Minor Victim 3 in March 2014:

- March 6, 2014, 7:29 pm: "do you want to see daddys dick";
- March 6, 2014, 7:30 pm: "can daddy see more of you";
- March 7, 2014, 3:25 pm: "daddy wants to come make you his little fuck toy for real"
- March 7, 2014, 3:34 pm: "i want to make your little pussy feel good";
- March 7, 2014, 3:35 pm: "i want to lick your little pussy til you beg me to stop";
- March 7, 2014, 3:40 pm: "i will see you in 2 days";
- March 7, 2014, 3:40 pm: "where in [Minor Victim 3's home state] are you";
- March 7, 2014, 3:44 pm: "can i fuck your little teen ass too";
- March 7, 2014, 4:29 pm: "let daddy see your sexy lil pussy";
- March 7, 2014, 5:14 pm: "do you drive yet bitch";
- March 12, 2014, 7:58 pm: "when dos daddy get to see yourihole";
- March 12, 2014, 7:58 pm: "your teen slut hole"; and
- March 12, 2014, 7:59 pm: "daddy wants pics of your pussy tonight"

On March 14, 2014, Shumate contacted Minor Victim 3's Facebook friend and asked her if she likes older men, and told her that Minor Victim 3 likes older men and calls Shumate "daddy." The friend's mother found the messages on her daughter's phone and contacted the local police.

### Count 4 and Relevant Conduct (Counts 2 & 3) (Jane Doe):

In March 2015, Shumate began communicating with Jane Doe, who was 15, on a teen chat website. Jane Doe told Shumate that she was 15. Shumate and Jane Doe exchanged mobile phone numbers and began communicating by text messaging and by email. Shumate initiated sexual conversations with Jane Doe, and asked her to produce and take images of her genitals and to touch her genitals, and send the images to Shumate. Jane Doe took the photos using a mobile phone and sent the images as instructed by Shumate, including the following:

- On April 8, 2015, at Shumate's request, Jane Doe (15) produced an image of her vagina and sent it to Shumate.

2

- On May 9, 2015, at Shumate's request, Jane Doe (16) produced an image of her vagina and sent it to Shumate.
- On May 12, 2015, at Shumate's request, Jane Doe (16) produced an image of her vagina with a hairbrush inserted, and sent it to Shumate.

On May 19, 2015, Shumate was arrested in Edgewood, Maryland, on a Pennsylvania warrant for violations of parole. Shumate's phone was seized at the time of his arrest, and the three images of Jane Doe mentioned above, as well as additional images of Jane Doe, were found on the phone. The phone also had the following text messages that Shumate sent to Jane Doe on May 19, 2015:

- "I would rather see pics of YOU"
- "Much better. Now show me your tits :-)"
- "Good. I need one clothed. One in bra. One no bra. I want your face in all of them"
- "I will make you cry slut"
- "I will spank you with a belt or rope or broom stick if I have to slut"
- "I will fuck your ass with a broom stick too slut"
- "I am going to fist your pussy and ass eventually whore"

Materials in Interstate Commerce & Transportation of Images in Interstate Commerce:

Shumate caused the production of images of Jane Doe, and attempted production of Minor Victim 2 and Minor Victim 3, through the use of mobile phones/digital cameras that were manufactured outside of the United States, and intending that the images would be transported in interstate commerce. Shumate therefore had reason to know that the images would be transported in interstate commerce, and that the images would be produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce.

3

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

*[signature]*
Brain Shumate

I am Mr. Shumate's attorney. I have carefully reviewed the statement of facts with him.

*[signature]*
Andrew Szekely, Esq.
Counsel for Brian Shumate

I am Mr. Shumate's attorney. I have carefully reviewed the statement of facts with him.

*[signature]*
Rebecca Talbott, Esq.
Counsel for Brian Shumate

4